# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND McGINNIS,<br><br>   Plaintiff,<br><br>   v.<br><br>B. ATKINSON,<br><br>   Defendant. | 1:12cv02045 AWI DLB PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO EXHAUST<br><br>(Document 17) |

This is a civil rights action filed pursuant to 42 U.S.C. § 1983 by Raymond McGinnis, a state prisoner proceeding pro se and in forma pauperis. Plaintiff filed this action on December 17, 2012. The action is proceeding against Defendant Atkinson for violation of the Eighth Amendment.

On December 13, 2013, Defendant filed an unenumerated Rule 12(b) Motion to Dismiss based on exhaustion. Plaintiff filed an opposition on February 6, 2014, and Defendant filed a reply on February 13, 2014. The motion is deemed submitted pursuant to Local Rule 230(l).

**A.    PROCEDURAL HISTORY AND PRIOR ACTION**

Plaintiff filed this action on December 17, 2012. On June 24, 2013, the Court issued an order finding a cognizable Eighth Amendment claim against Defendant B. Atkinson. Plaintiff's claim is based the alleged unnecessary use of pepper spray on June 14, 2011.

Plaintiff filed a prior action against Defendant Atkinson concerning the same June 14, 2011, incident, on August 12, 2011.[1] The Court found a cognizable Eighth Amendment claim and ordered service.

---

[1] The Court may take judicial notice of court records in other cases. United States v. Howard, 381 F.3d 873, 876 n.1 (9th Cir. 2004).

1

On March 5, 2012, Defendant filed a Motion to Dismiss based on exhaustion. The Court issued Findings and Recommendations that the motion be granted on June 25, 2012. The Court adopted the Findings and Recommendations on July 19, 2012, and the action was dismissed without prejudice.

Plaintiff filed this action five months later.

## B.   PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that on June 14, 2011, while housed at Kern Valley State Prison, his cellmate, Inmate Harrison, had an issue with his food tray. Inmate Harrison brought the issue to the attention of Defendant Atkinson and C.O. Sedlezky, and he requested to see the head kitchen worker. At tray pick-up, Inmate Harrison gave Plaintiff's food tray to Defendant Atkinson and again requested to see a kitchen worker or sergeant.

During this time, Plaintiff was sitting on the top bunk writing a letter. Defendant Atkinson and C.O. Sedlezky left the cell to complete tray pick-up in the housing unit, and then returned to Plaintiff's cell for the other tray. Inmate Harrison told them that he was not giving them the tray. The officers pulled out pepper-spray and ordered the tower officer to open the cell door. Inmate Harrison backed away from the door, and Defendant Atkinson retrieved the food tray from the sink and left the cell.

About five minutes later, Inmate Harrison covered up the window with paper. Defendant Atkinson and C.O. Sedlezky returned to the cell and talked to Inmate Harrison through the uncovered side window. Both officers told Inmate Harrison to take down the window covering. Defendant Atkinson then told the tower officer to open the cell door. The door opened about a foot and the tray slot was open. C.O. Sedlezky then pepper-sprayed Inmate Harrison, who moved towards the back of the cell.

At this time, Plaintiff was still sitting on the top bunk. He looked towards the tray slot, while he remained seated on his bed. Defendant Atkinson then pointed his pepper spray in Plaintiff's direction and pepper-sprayed Plaintiff for no reason. The pepper spray hit Plaintiff directly in the face. Plaintiff yelled, "What are you spraying me for?" C.O. Sedlezky then ordered Plaintiff to get

off his bed.  Plaintiff somehow made it to the floor and was ordered to cuff up.  Plaintiff and Inmate Harrison were then cuffed and taken out of the cell.

**C.    DISCUSSION**

    1.    <u>Exhaustion Requirement</u>

Pursuant to the Prison Litigation Reform Act of 1996, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit.  <u>Jones v. Bock</u>, 549 U.S. 199, 211, 127 S.Ct. 910 (2007); <u>McKinney v. Carey</u>, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, <u>Booth v. Churner</u>, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all suits relating to prison life, <u>Porter v. Nussle</u>, 435 U.S. 516, 532, 122 S.Ct. 983 (2002).  An administrative grievance must alert the prison to the nature of the wrong for which redress is sought.  <u>Griffin v. Arpaio</u>, 557 F.3d 1117, 1120 (9th Cir. 2009).

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which the defendants have the burden of raising and proving the absence of exhaustion.  <u>Jones</u>, 549 U.S. at 216; <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1119 (9th Cir. 2003).  The failure to exhaust is subject to an unenumerated Rule 12(b) motion, and in resolving the motion, the Court may look beyond the pleadings and decide disputed issues of fact.  <u>Stratton v. Buck</u>, 697 F.3d 1004, 1008 (9th Cir. 2012); <u>Morton v. Hall</u>, 599 F.3d 942, 945 (9th Cir. 2010); <u>Wyatt</u>, 315 F.3d at 1119-20.  If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice. <u>Jones</u>, 549 U.S. at 223-24; <u>Lira v. Herrera</u>, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

Defendants bear the initial burden, as the moving party, to demonstrate the absence of any evidence that exhaustion occurred.  <u>Wyatt</u>, 315 F.3d at 1119.  The burden then shifts to Plaintiff to produce evidence demonstrating either exhaustion or the existence of circumstances excusing exhaustion.  <u>Sapp v. Kimbrell</u>, 623 F.3d 813, 822-23 (9th Cir. 2010); <u>Nunez v. Duncan</u>, 591 F.3d 1217, 1224 (9th Cir. 2010).

2.      Appeals Process

The California Department of Corrections and Rehabilitation ("CDCR") has an administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on prisoners' welfare. Cal. Code Regs. tit. 15, § 3084.1. Generally, a prisoner must proceed through an initial informal level and three formal levels of review, culminating in a third-level decision. Cal. Code Regs. tit. 15, § 3084.5. In order to satisfy section 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. Woodford v. Ngo, 548 U.S. 81, 85-86, 126 S.Ct. 2378 (2006); McKinney, 311 F.3d at 1199-1201.

3.      Analysis

As noted above, Plaintiff filed an earlier action for the same incident that was subsequently dismissed for failure to exhaust. In his opposition for this motion, Plaintiff cites exhibits that he submitted in opposing the motion in the prior action. The Court takes judicial notice of the filings in McGinnis v. B. Atkinson, 1:11-cv-01337-LJO-JLT. United States v. Howard, 381 F.3d 873, 876 n.1 (9th Cir. 2004).

The Court has reviewed the analysis in the prior Findings and Recommendations and finds no reason to depart from the conclusion. The Court explained as follows:

> From the evidence presented, it appears that Plaintiff attempted to submit a grievance related to the June 14, 2011 event. However, it appears also that this initial grievance did not make it to the appeals office. The grievance that was received arrived on July 26, 2011, but it was returned to Plaintiff with an instruction as to the corrections that were needed. (Doc. 23-3 at 10). These instructions included the advisal that read, "Be advised that you cannot appeal a rejected appeal, but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b)." (Doc. 31 at 26, emphasis added). Notably, Officer Hernandez spoke with Plaintiff on August 2, 2011 and reiterated the information set forth in the written notice rejecting the appeal for corrections.     (Doc. 23-2 at 3-4).
>
> As late as August 9, 2011, the appeals office encouraged Plaintiff to provide the corrected appeal. (Doc. 31 at 14). Nevertheless, Plaintiff failed to do this until October 3, 2011, which was more than 60 days after his grievance was returned to him on July 28, 2011, and the August 2, 2011, face-to-face notification provided by Officer Hernandez, and nearly 60 days after the August 9, 2011, suggestion that he re-submit his corrected appeal. (Doc. 31 at 25). Thus, when Plaintiff finally submitted his corrected grievance, it was untimely and, importantly, submitted after he filed the current litigation. (Docs. 1, 7). As a result, his

appeal was cancelled and he was informed about his right to appeal the cancellation. (Doc. 31 at 27). This advisal read,

> Pursuant to CCR 3084.6(e), once an appeal has been cancelled, that appeal may not be resubmitted. However, **a separate appeal can be filed on the cancellation decision**. The original appeal may only be resubmitted if the appeal on the cancellation is granted.

Id. (emphasis added). Despite this, Plaintiff failed to appeal the cancellation.

McGinnis v. Atkinson, 1:11-cv-01337-LJO-JLT, ECF No. 5, at 5-6.

Interestingly, while Plaintiff admits in his opposition that on August 2, 2011, Officer Hernandez told him that his appeal was received on July 26, 2011, but was rejected and returned with instructions on July 28, 2011, he omits the remaining facts on the Form 22 that the Court cited in the prior decision. Specifically, although Plaintiff cites to the exhibit, he does not include the fact that on August 4, 2011, he knew that his appeal had been sent back. More importantly, Plaintiff omits the August 9, 2011, response from Appeal Coordinator Tallerico suggesting that Plaintiff rewrite and resubmit his complaint.

In his current opposition, Plaintiff simply states that he did not receive the July 28, 2011, screen out. He then skips to the October 2, 2011, letter that he wrote to Appeal Coordinator Tallerico. The Court will not simply allow Plaintiff to dispose of unfavorable facts relied on in the prior decision. In any event, even omitting the August 4, 2011, and August 9, 2011, responses demonstrating knowledge, Plaintiff still fails to explain why he waited until October 2011 to submit the corrected appeal. In the prior Findings and Recommendations, the Court explained:

> Nevertheless, Plaintiff fails to explain why he waited until October 3, 2011, to submit the corrected appeal. (Doc. 31 at 25). This was not a situation in which the appeals coordinator foreclosed the possibility of Plaintiff taking any further action regarding the appeal. (Doc. 31 at 14). Rather than take advantage of the opportunity, Plaintiff waited nearly 60 days to resubmit his appeal. (Doc. 23-2 at 4-59; Doc. 31 at 6; Doc. 31 at 25). Given that approximately 90 days had passed since the original deadline of July 15, 2011 and approximately 60 days had passed since Plaintiff had been advised to re-file his appeal, Plaintiff's October 3, 2011, appeal (resubmitted October 10, 2011) was cancelled as untimely. Then, when this occurred, Plaintiff failed to appeal the cancellation decision.

McGinnis v. Atkinson, 1:11-cv-01337-LJO-JLT, ECF No. 5, at 8.

5

Plaintiff does submit one new exhibit in the current opposition.  It appears that he resubmitted his appeal to the Third Level of Review in October 2012.  The appeal was received by the Third Level on October 18, 2012.  On October 29, 2012, J. D. Lozano wrote Plaintiff a letter explaining that he was attempting to submit an appeal that had been cancelled.  Lozano advised Plaintiff that this is considered misuse or abuse of the appeals process and that repeated violations may lead to appeal restriction.

Plaintiff's October 2012 submission does not exhaust his claims.  Plaintiff waited more than one year after October 2011 cancellation to take any action, and this action was likely a result of the dismissal of his first action.  The fact remains that Plaintiff did not appeal the October 2011 cancellation.

Accordingly, the Court finds that Plaintiff has not met his burden of demonstrating that exhaustion was unavailable.

**D.     CONCLUSION AND RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.     Defendant's Motion to Dismiss, filed December 13, 2013, be GRANTED; and

2.     This action be DISMISSED WITHOUT PREJUDICE for Plaintiff's failure to exhaust.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within thirty (30) days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  A party may respond to another party's objections by filing a

1 response within fourteen (14) days after being served with a copy of that party's objections.  The
2 parties are advised that failure to file objections within the specified time may waive the right to
3 appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

5 IT IS SO ORDERED.

6 Dated:   **March 20, 2014**                         /s/ *Dennis L. Beck*
7                                                              UNITED STATES MAGISTRATE JUDGE